# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| ERIC O'BRIEN JOHNSON, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:13-cv-366 (MTT) |
| | : | |
| Warden MCLAUGHLIN, *et al.*, | : | Proceedings Under 42 U.S.C. § 1983 |
| Defendant. | : | Before the U.S. Magistrate Judge |

### RECOMMENDATION

On September 27, 2013, Plaintiff Eric O'Brien Johnson filed his original complaint in the above-styled case under 42 U.S.C. § 1983. Doc. 1. In the original complaint, Plaintiff alleged that Defendants Warden Gregory McLaughlin (" Warden McLaughlin"), Lieutenant Christopher Lakes ("Lt. Lakes"), and Lieutenant Peter Eaddie ("Lt. Eaddie") used excessive force when they "deployed riot gas" in Plaintiff's cell (Doc. 1-1, p. 2). Plaintiff further alleged that Lt. Lakes and Lt. Eaddie failed to intervene by "laugh[ing] at the incident [and] encourag[ing] the whole incident." Doc. 1 at 4. The Court ordered Plaintiff to supplement his original complaint because he failed to show that he had exhausted his available administrative remedies. Doc. 5. Plaintiff refiled the same letter he submitted in his complaint. Doc. 7.

Now before the Court is a Motion for Summary Judgment filed by Defendants Warden McLaughlin, Lieutenant Peter Eaddie and Lieutenant Christopher Lakes filed in Plaintiff Eric O'Brien Johnson's civil case brought pursuant to 42 U.S.C. § 1983. According to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact arises only when "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Patton v. Triad Guar. Ins. Corp.,* 277 F.3d 1294, 1296 (11th Cir. 2002). For the reasons set forth below, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED**.

In the alternative, if the Court finds a genuine issue of material fact or that judgment should not be granted as matter of law, Plaintiff has failed to exhaust all administrative remedies, and it is **RECOMMENDED** that the court **DISMISS** Plaintiff's claim *sua sponte* for failure to exhaust available administrative remedies under 42 U.S.C. § 1983. *See infra* section II. C.

## I. EVIDENCE PRESENTED

Petitioner asserts in his complaint, responses, and deposition that Defendants McLaughlin, Eaddie, and Lakes used excessive force when deploying pepper-spray, and that Defendants Eaddie and Lakes failed to intervene. Doc. 1. Defendants proffer video evidence[1] that shows that there is no genuine dispute as to any material fact and that Defendants are entitled to judgment as a matter of law concerning Plaintiff's excessive use of force claim and failure to intervene claim. The United States Supreme Court has recognized a "wrinkle" in cases where the record contains video evidence, holding that when facts are disputed, and video evidence is present, a court should "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). Following the Supreme Court and viewing the facts in the light depicted by the videotape, the facts in this case are as follows.

---

[1] The authenticity of the video recording is sworn to by Veronda Cladd, the Administrative Assistant at Macon State Prison, in Defendant's affidavit. *See* Def. Ex. J. Aff. Of Veronda Clad (Doc. 34-12).

2

On August 5, 2013, Plaintiff was an inmate at Macon State Prison, housed in administrative segregation. Pl.'s Compl. (Doc. 1); Def. Ex. B, Dep. of Eric Johnson (Doc. 34-3, p. 21). On that date, Warden McLaughlin, along with several other officers, approached Plaintiff's cell. Def. Ex. H, Video Recording #1 (Doc. 34-10). As the video begins, McLaughlin states that he had previously requested that Plaintiff get up for inspection, but Plaintiff had refused. Plaintiff can be heard responding "I do not have to get up for no inspection…you spray me." *Id.* Defendant Lakes states that the time is 09:20 and then looks into Plaintiff's cell. *Id.* Defendants ask Plaintiff to come to the door to be handcuffed. Def. Ex. H, Video Recording #1 (Doc. 34-10). Plaintiff responds, "You spray me for not getting ready for inspection, bitch?" *Id*.

Defendants then ask Plaintiff to remove paper from his window. *Id.* Warden Johnson instructs several times to slide the paper under the door. In his deposition Plaintiff explained that the paper in the window was a legal envelope, and that he had to remove legal mail from the envelope. Def. Ex. B, Dep. of Eric Johnson (Doc. 34-3, p. 31). After removing the legal mail from the envelope, Plaintiff prepared to place the envelope through the tray flap in the door *Id.* The video shows an officer approaching the cell door and releasing a single, short burst of spray, for less than one second, through the flap of the door, at the same time Plaintiff was beginning to place the envelope through the flap. Def. Ex. H, Video Recording #1 (Doc. 34-10). After releasing the spray, the officers back away from the cell door, leaving the window open. *Id.* The video shows that no officer laughed or encouraged the use of pepper spray. *Id.* Off camera, one of the officers can be heard coughing. *Id*.

Some forty-five minutes after the use of the spray, at 10:05, Lt. Lakes returned to Plaintiff's cell to place him in handcuffs. Def. Ex. H, Video Recording #5 (Doc. 34-10). Plaintiff complied, and after he was cuffed he was taken out of his cell. *Id.* On the video, Plaintiff's face

3

appears puffy and somewhat red, but Plaintiff is not coughing, wheezing, or showing signs of any injury or pain. *Id*. Plaintiff was escorted to the medical examination room in his Unit. *Id*.

Nurse Shearer then performed a use of force examination on Plaintiff and recorded her findings on a "Use of Force Assessment" report. *Id*, see also Def. Ex. C, Use of Force Assessment (Doc. 34-5). The nurse found that Plaintiff: (1) suffered no injury to any part of the body; (2) was alert and oriented; (3) responded to verbal commands; (4) was speaking and walking normally; and (5) that no follow-up was needed. *Id*. After the examination, Plaintiff was offered a decontamination shower. Def. Ex. H, Video Recording #5 (Doc. 34-10). Plaintiff refused the decontamination shower. *Id*; *see also* Def. Ex. B, Dep. of Eric Johnson (Doc. 34-3, p. 12).

Nurse Shearer's report is supported by the video recording. Prior to the examination, Plaintiff looks at the camera and states, "Excuse me, I fear for my life. They just sprayed me for no reason." *Id*. Although the camera is pointed at the ceiling during the examination, the audio recording continues. The examination lasts approximately three minutes. Plaintiff states that he is having trouble breathing, is not heard to be breathing heavily, coughing, or wheezing. At the conclusion of the examination, Plaintiff states to the nurse that he was sprayed in retaliation for filing a previous lawsuit.[2] Lt. Lakes asks Plaintiff whether he wanted to take a decontamination shower, but Plaintiff refuses.

After this incident, McLaughlin prepared a disciplinary report. Ex. G, Disciplinary Report #410952 (Doc. 34-9). Plaintiff was charged with failure to follow instructions after he was instructed several times to prepare for inspection but did not comply. *Id.*

---

[2] Doc. 34. Plaintiff currently has four pending cases in the United States District Court for the Middle District of Georgia: 5:13-cv-00293; 5:13-cv-00366; 5:14-cv-00003; 5:14-cv-00141, and one pending case in the United States District Court for the Northern District of Georgia: 4:14-cv-00259.

4

## II. DISCUSSION

Defendant moves for summary judgment on both Plaintiff's excessive force and failure to intervene claims. Defendants' Motion shows that there is no genuine dispute as to any material fact and that Defendants are entitled to judgment as a matter of law. Plaintiff failed to show that there was an issue of material fact or that Defendant is not entitled to judgment as a matter of law. Therefore, Defendants' motion should be granted.

### A. Excessive Force

Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." "[T]he treatment a prisoner receives in prison ... [is] subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (citation omitted). An Eighth Amendment violation is cognizable under 42 U.S.C. § 1983. *Hale v. Tallapoosa Cnty.,* 50 F.3d 1579, 1582 (11th Cir. 1995). "The eighth amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to a[n] 'unnecessary and wanton infliction of pain.'" *Bennett v. Parker,* 898 F.2d 1530, 1532 (11th Cir. 1990).

To establish a claim for excessive force, the Plaintiff must show that (1) the Defendant acted with a malicious and sadistic purpose to inflict harm and (2) that a more than *de minimis* injury resulted. *Johnson v. Breeden,* 280 F.3d 1308, 1321 (11th Cir. 2002). The Supreme Court has clarified that "[t]he 'core judicial inquiry' ... [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian,* 503 U.S. 1, 7 (1992)). Although the extent of any injury is not alone dispositive of an excessive force case, it is "one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Hudson,* 503 U.S. at 7 (*quoting Whitley v. Albers,* 475 U.S. 312, 321 (1986)). Not "every malevolent touch by a prison guard" or "every push or shove" violates a prisoner's constitutional rights, and the "prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. 9–10 (1992) (citations omitted). Although alleged injuries need not be severe to support an excessive force claim, the failure to allege any injury indicates that the force was not so excessive as to violate the prohibition against an unnecessary and wanton infliction of pain. *Id.* at 10.

In determining whether a jailer's use of force was excessive, the Eleventh Circuit considered a similar set of facts and laid out the following factors: "(1) the need for the force; (2) the relationship between that need and the amount of force used; (3) the extent of the resulting injury; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them; and (5) any efforts made to temper the severity of a forceful response." *Danley v. Allen,* 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott,* 610 F.3d 701 (11th Cir. 2010). Each of these factors will be considered in turn below.

Defendants have submitted various documents affidavits, as well as a video recording of the incident underlying this lawsuit, to support their argument that they are entitled to the entry of summary judgment in regard to the Plaintiff's claim of excessive force. Doc. 34. Plaintiff

6

responded with twenty-one separate documents for the court to consider. Doc. 39. Because the evidence fails to support a finding that (1) the Defendant acted with a malicious and sadistic purpose to inflict harm or (2) that a more than *de minimis* injury resulted, Defendants' Motion for Summary Judgment on Plaintiff's excessive force and failure to intervene claims should be granted.

   *1. The Need for Force*

The evidence shows that there was a legitimate need for force, as Plaintiff had refused to be ready for inspection, after repeated requests to do so, and also had a legal envelope covering part of his cell window in violation of prison regulations. Doc. 34-1. Defendants submitted Plaintiff's earlier disciplinary reports, which show that Plaintiff had previously damaged state property (Doc. 34-7, Def. Ex. E, Disciplinary Report Work Sheet #406744), and failed to follow instructions (Doc. 34-8, Def. Ex. F, Disciplinary Report Work Sheet #409292). Defendants' video evidence further shows that Plaintiff felt that he did not have to "get up for no inspection," despite Warden McLaughlin's repeated requests. Def. Ex. H, Video Recording #1 (Doc. 34-10).

The Eleventh Circuit has held that "[p]rison guards may use force when necessary to restore order." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). The Circuit Court has further stated that "[p]epper spray is an accepted non-lethal means of controlling unruly inmates." *Danley*, 540 F.3d at 1307. "And prison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and well-thought out. Certainly they are not required to do so where an inmate repeatedly fails to follow those orders." *Id*. The need for the use of force, the first factor to be considered in the excessive force analysis, is established "by the undisputed evidence that [the inmate] created a disturbance." *Bennett*, 898 F.2d at 1533. Thus, Defendants

showed that the use of force was necessary due to Plaintiff's refusals to comply with Warden McLaughlin's orders.

Plaintiff argues that "Defendant McLaughlin's statements during the use of force 'shows his intent to inflict unnecessary and wanton pain' upon [P]laintiff." Doc. 39, p. 10. This assertion is simply unsupported by the record. Plaintiff's refusal to comply with Warden McLaughlin's orders, as shown on the video recording, establishes that some use of force was warranted, and does not raise a genuine issue of material fact as to the need for force in this case.

### 2. *The Relationship Between that Need and the Amount of Force Use*

The force used in this incident was minimal and proportional to the need to use force. The video shows a single burst of pepper-spray lasting less than one-second, "deployed just outside of the tray flap on Plaintiff's cell door, and [] only some of the burst of spray went into Plaintiff's cell," (Doc. 34-1, p. 10). This application of force was appropriately related to the need to restore order and ensure compliance with orders.

The evidence presented in this case weighs against a finding of a constitutional violation. Addressing the second factor, Plaintiff contends that "deploying chemical agents are not an authorized sanction for failure to be inspection ready." (Doc. 39, p. 11.) As a matter of law, however, "[a] short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders."*Danley,* 540 F.3d at 1307, (*citing Vinyard v. Wilson,* 311 F.3d 1340, 1348 (11th Cir. 2002) ("Courts have consistently concluded that using pepper spray is reasonable ... where the plaintiff was ... refusing police requests.")). Additionally, Plaintiff had clearly not stopped refusing to comply with McLaughlin's orders as Plaintiff did not try to give the paper covering the window to the Defendants until the tray was opened for the pepper spray. Def. Ex. H, Video Recording #1 (Doc. 34-10); *Cf. Danley*, 540 F.3d at 1309 ("Once a prisoner has

stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need."); *Nasseri v. City of Athens*, 373 Fed.App'x. 15, 18 (11th Cir. 2010) (use of pepper spray against inmate struggling with officer was permissible use of force); *Sanchez*, 349 Fed.App'x. at 483 (use of pepper spray against inmate who refused to comply with officers' orders was permissible use of force).

Although Plaintiff maintains that he was kept in a "chemical agent haze" for fifty minutes and had trouble breathing after the incident, the video and medical evidence presented by the Defendants do not support these allegations. Instead, Plaintiff's medical exam confirmed that Plaintiff suffered no injury from the incident. Def. Ex. C, Use of Force Assessment (Doc. 34-5). Also, the video evidence does not show that Plaintiff had trouble breathing after the incident; rather, Plaintiff was able to walk and talk normally with no external signs of breathing trouble. Def. Ex. H, Video Recording #5 (Doc. 34-10). Therefore, there is no genuine issue of material fact regarding whether or not the application of force in this case was disproportionate to the need for force.

### 3. *The Extent of the Resulting Injury*

Evidence presented before the court confirms that aside from some redness or puffiness of the face, Plaintiff was uninjured by the short burst of pepper spray. The medical and video evidence before the Court does not confirm the level of injury alleged by the Plaintiff,[3] and Plaintiff has not submitted evidence to supports his contentions. As discussed above Plaintiff's medical exam directly after the incident confirmed that Plaintiff suffered no injury from the incident. Def. Ex. C, Use of Force Assessment (Doc. 34-5). The video evidence does not show that Plaintiff had trouble breathing after the incident. Def. Ex. H, Video Recording #5 (Doc. 34-10).

---

[3] Plaintiff specifically alleges chest pains, wheezing, coughing, and sneezing are injuries resulting from the pepper spray. *See* Doc. 39, p. 10-11.

Furthermore, Plaintiff cannot make a showing of injury as a matter of law that he suffered from any resulting injuries as the Eleventh Circuit has held that "[a]ny injuries or discomfort [Plaintiff] suffered as a necessary result of a dose of pepper spray [are] neither substantial nor long lasting", as pepper spray "is designed to disable a suspect without causing permanent physical injury." *Danley*, 540 F.3d at 1308.

### 4. The Extent of the Threat of the Safety of Staff and Inmates

The fourth factor requires an assessment of "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them." *Whitley*, 475 U.S. at 321. An inmate's refusal to comply with orders creates a threat to the safety of staff and inmates. *See, e.g., Danley,* 540 F.3d at 1308; *McClendon v. Smith,* at 2014 WL 575538 *6 (M.D.Ga. 2014). However, "officers cannot continue the use of force once the threat has passed or the prisoner is subdued." *Skritch v. Thornton,* 280 F.3d 1295, 1303 (11th Cir. 2002); *Campbell v. Sikes,* 169 F.3d 1353, 1374 (11th Cir. 1999).

As discussed in the Court's analysis of the first factor, the need for force, Plaintiff's refusal to obey orders created a disturbance and, as admitted by Plaintiff, created a need for the use of force. Plaintiff's refusal to follow orders posed a threat to the safety of staff and inmates in several ways. First, at least four officers' attention was diverted from maintaining security throughout the facility to the task of forcing Plaintiff to comply with orders. Second, a single detainee's refusal to follow orders threatens to undermine officers' authority throughout a facility. And finally, a detainee's non-violent protestations can easily escalate to physical resistance (and officers are not required to wait for this escalation before using physical force). Further, the officers did not continue the use of force once the threat passed and the prisoner was subdued. Therefore, there is no genuine issue of material fact as to the extent of the threat of safety of the staff and inmates.

### 5. *Efforts to Temper the Severity of a Forceful Response*

Finally, the Court considers efforts made by the officers' to temper the severity of the force used against Plaintiff. The record shows that Plaintiff received a prompt medical examination 45 minutes after being sprayed, and was offered a decontamination shower as proof of an effort to temper the severity of pepper spray.

The Eleventh Circuit and this court have both addressed appropriate efforts when determining whether or not Defendants attempted to temper the severity of a forceful response. These efforts can include: ceasing the use of force once a detainee has been subdued, *Danley,* 540 F.3d at 1308–09; efforts to check on the detainee's wellbeing throughout the application of force, *Stanfill v. Talton,* 851 F.Supp.2d 1346, 1373 (M.D.Ga. 2002) (holding that checking on a prisoner every fifteen minutes while he was in a restraint chair constituted an effort to temper the severity of a forceful response); and post injury efforts to ameliorate the effects of force used, such as immediately summoning medical assistance, *Cockrell,* 510 F.3d at 1312.

As discussed above, the use of pepper spray did not continue after the initial spray, which lasted less than one second. Video evidence shows that Defendants took Plaintiff to have a Use of Force examination completed, and that Plaintiff was offered a decontamination shower after his medical examination. Plaintiff argues that Defendants did not make an effort to temper the severity of the forceful response because Plaintiff refused the decontamination shower "for fear of the chemical agents reacting, where Plaintiff would feel the full effect of the chemical agent as if he had just been sprayed." Doc. 39, p. 14. Despite Plaintiff's subjective beliefs about possible reactions with water and pepper spray, there is no genuine dispute of material fact that Defendants made efforts to temper the severity of the pepper spray incident.

In light of all five factors considered by the court to determine excessive force, as well as medical evidence presented by the Defendants, the moving party has met their burden for summary judgment by proving that there is no genuine issue of material fact and that judgment is required as a matter of law on Plaintiff's excessive force claim.

B.     Failure to Intervene

In regard to his claim that Defendants Lakes and Eaddie were deliberately indifferent and failed to intervene in or stop the altercation earlier between Plaintiff and Defendant McLaughlin, Plaintiff has failed to set forth adequate facts to establish such a claim.

"Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence.... However, in order for liability to attach, the officers must have been in a position to intervene." *Terry v. Bailey*, 376 Fed.App'x. 894, 896 (11th Cir. 2010) (citing *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)). However, if no excessive use of force takes place, an officer has no duty to intervene. *Crenshaw v. Lister*, 556 F.3d 1283, 1294 (11th Cir. 2009); *Vicks v. Knight*, 380 Fed.App'x. 847, 852 (11th Cir. 2010); *McBride v. Rivers*, 170 Fed.App'x. 648, 658 (11th Cir. 2006) (defendant could not be liable for failing to intervene after court determined no excessive force had been used). Inasmuch as the Court has concluded that no reasonable jury could find that Defendant McLaughlin used excessive force against the Plaintiff, no reasonable jury could find that Defendants Lakes and Eaddie were liable for failing to intervene.

C.     Failure to Exhaust

As an alternative to summary judgment, the case may be dismissed because Plaintiff has failed to prove that he has exhausted his available administrative remedies. See. Doc. 1, Pl.'s Compl. Plaintiff filed a letter from the Georgia Department of Corrections confirming that

Plaintiff had filed a grievance, and that the grievance was closed, but did not further supplement his complaint pursuant to this Court's order. See Doc. 5, 7. In his Supplement to the Complaint, Plaintiff simply submitted the original letter from his Complaint, which states that "a request for a formal investigation is warranted." Compare Doc. 5-2 to Doc. 7-1. Georgia's three-step grievance procedure requires that a prisoner file: (1) an informal grievance; (2) a formal grievance with his counselor; and (3) an appeal to the Office of the Commissioner. See e.g., *McCurry v. Perry*, 2012 WL 4097723 (S.D. Ga. Aug. 27, 2012) (describing Georgia's grievance process). Plaintiff has failed to show that he fully complied with Georgia's three-step grievance procedure as he did not produce evidence that he filed either a formal grievance or an appeal.

The United States Supreme Court has held that the exhaustion of available administrative remedies is a mandatory requirement. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005) ("a prisoner who does not properly take each step within the administrative process has failed to exhaust" administrative remedies); *Miller v. Tanner*, 196 F.3d 1190, 1993 (11th Cir. 1999) ("An inmate incarcerated in a state prison … must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983."). The exhaustion requirement under section 1997e(a) is intended to "eliminate unwarranted federal-court interference with the administration of prisons" and allow "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Furthermore, the Eleventh Circuit, in an unpublished opinion, has held that a district court may dismiss a prisoner's civil complaint under 42 U.S.C. § 1983, *sua sponte*, if the Plaintiff fails to exhaust his administrative remedies. *Anderson v. Donald*, 261 Fed. App'x 254 (11th Cir. 2008). Therefore, if summary judgment is not warranted, it is **RECOMMENDED** that the court

**DISMISS** Plaintiff's claim *sua sponte* for failure to exhaust available administrative remedies under 42 U.S.C. § 1983.

### III.    CONCLUSION

Because Plaintiff has failed to demonstrate any genuine issue of material fact concerning either his failure to protect claim or his failure to provide medical care claim, and because Defendants are entitled to judgment as a matter of law, it is hereby **RECOMMENDED** that the Motion for Summary Judgment (Doc. 34) be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the District Judge to whom the case is assigned **within fourteen (14) days** after being served with a copy thereof.

**SO RECOMMENDED**, the 9th day of December, 2014.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge
